

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# GAINESVILLE DIVISION

| | |
|---|---|
| JEANNE WEINSTEIN, Individually and on behalf of all others similarly situated under 29 U.S.C. § 216(b),<br><br>    Plaintiffs,<br><br>v.<br><br>440 CORP. d/b/a THE RIDGE GREAT STEAKS & SEAFOOD and STEPHEN CAMPBELL,<br><br>    Defendants. | Civil Action No.<br><br>2:19-CV-105-RWS |

## **FINDINGS OF FACT AND CONCLUSIONS OF LAW**

The Court held a bench trial in this case on October 10, 2023, to determine whether Defendants 440 Corp. and Stephen Campbell (collectively, "Defendants") violated the Fair Labor Standards Act's ("FLSA") minimum wage requirements. Having considered the parties' pleadings and the evidence introduced at trial, the Court now makes the following Findings of Fact and Conclusions of Law pursuant to Federal Rule of Civil Procedure 52(a).¹

---

¹ Rule 52(a) requires a district court to issue findings of fact and conclusions of law whenever it conducts a bench trial. FED. R. CIV. P. 52(a). "Findings of fact must be sufficient to allow the reviewing court 'an opportunity to engage in meaningful appellate review." McEver v. Nw. Mut. Life Ins., 629 F. Supp. 3d 1340, 1352

# FINDINGS OF FACT

## I. Procedural History

Plaintiff Jeanne Weinstein, a former server at The Ridge Great Steaks & Seafood ("The Ridge"), initiated this collective action on behalf of herself and a purported class of similarly situated former employees of The Ridge (together with Plaintiff Weinstein, "Plaintiffs") by filing a Collective Action Complaint on May 24, 2019. [Dkt. 1]. Therein, Plaintiffs claim Defendants violated the FLSA's minimum wage requirements, 29 U.S.C. § 206, by operating an improper tip pool that deprived Plaintiffs of their ability to retain all tips received during their shifts. [See id. at ¶¶ 28–30]. Specifically, Plaintiffs allege Defendants' unlawfully kept portions of the pooled funds for themselves, rather than distributing those funds to tipped employees. [See id.].

---

(M.D. Ga. 2022) (quoting Fed. Trade Comm'n v. On Point Cap. Partners, LLC, 17 F.4th 1066, 1080 (11th Cir. 2021)). But Rule 52(a) does not require courts to make a finding on every contention raised by the parties. Id. (citing Feazell v. Tropicana Prods., Inc., 819 F.2d 1036, 1042 (11th Cir. 1987)). Instead, courts "need only make brief definite, pertinent findings and conclusions upon *the contested matters*; there is no necessity for overelaboration of detail or particularization of facts." Id. (emphasis added) (quoting On Point Cap. Partners, 17 F.4th at 1081). "So long as there is 'sufficient record evidence to support the findings, [district courts] need not state the evidence or any of the reasoning upon the evidence.'" Id. (alteration in original) (quoting Stock Equip. Co. v. Tenn. Valley Auth., 906 F.2d 583, 592 (11th Cir. 1990)).

After nearly eighteen months of discovery, the parties moved for summary judgment. Defendants moved for summary judgment on the basis that Plaintiffs could not prevail on their minimum wage claim because Defendants were entitled to claim the FLSA's tip credit defense, 29 U.S.C. § 203(m)(2)(A)(ii). [Dkt. 105].

The FLSA's tip credit defense allows employers to "pay an employee a cash wage below the minimum wage, so long as the employer supplements the difference with the employee's tips." Rubio v. Fuji Sushi & Teppani, Inc., 2013 WL 230216, at *2 (M.D. Fla. Jan. 22, 2013) (citing 29 U.S.C. § 203(m)). To establish entitlement to the defense, an employer must show that (1) the employees who received tips qualify as "tipped employees"; (2) the employer notified the employees that it intended to claim the tip credit; and (3) the employees retained all tips they received, unless the employees participate in a tip pool—as is the case here—that redistributes a portion of those tips to employees "who customarily and regularly receive tips."[2] 29 U.S.C. § 203(m)(2)(A)(ii).

Plaintiffs, in turn, moved for partial summary judgment on the basis that Defendants could not rely on the tip credit defense to avoid liability for two

---

[2] The tip credit defense is an affirmative defense; thus, the employer bears the burden of proving entitlement to the defense. See Nail v. Shipp, 2019 WL 3719397, at *6 (S.D. Ala. Aug. 6, 2019) (citing Barcellona v. Tiffany English Pub, Inc., 597 F.2d 464, 467 (5th Cir. 1979)).

3

reasons. First, Plaintiffs argued that Defendants wrongfully used tip pool funds to pay a flat wage to support staff who did not qualify as tipped employees under the terms of the FLSA (which would negate the first element of the tip credit defense). [Dkt. 109, at 14–16]. Second, Plaintiffs argued that Defendants could not show they fully distributed the tip pool funds to only employees who customarily and regularly received tips (which would negate the third element of the tip credit defense) because they could not prove that tip pool funds set aside for bartenders were in fact paid to those bartenders.[3] [Id. at 12–13].

Following oral argument, the Court issued an order granting in part and denying in part the parties' motions for summary judgment. [Dkt. 136]. Therein, the Court found that Defendants carried their burden of proving the first two elements of the tip credit defense, [id. at 32 n.7, 35], but held that a genuine issue of material fact remained as to the third element, [id. at 38]. Specifically, the Court held, as a matter of law, that Defendants' tip pool did not violate the FLSA by using the tip pool funds to pay a flat wage to certain support staff because those support staff qualified as tipped employees. [Id. at 25–26, 38 (finding that front-of-house staff and server-trainees qualified as tipped employees due to their level of

---

[3] Plaintiffs also moved for summary judgment on their minimum wage claim and on the issue of whether Defendant Campbell qualifies as an "employer," as defined by the FLSA. [Dkt. 109, at 1–2].

customer interaction)]. Therefore, the Court found that only one issue of material fact remained: whether Defendants unlawfully kept any of the tip pool funds for themselves, rather than distributing those funds to employees who customarily and regularly received tips (specifically bartenders). [Id. at 32–33, 38].

Having significantly narrowed the scope of issues presented, the Court referred the case to mediation. [Id. at 38–39]. That mediation proved unsuccessful. [Dkt. 141]. Therefore, the parties proceeded to trial to resolve the lone remaining issue of whether Defendants unlawfully retained any of the tip pool funds.

With that background in mind, and based on the evidence presented at trial, the Court makes the following Findings of Fact and Conclusions of law.

## II.    Findings of Fact

Most of the facts of this case are undisputed. For example, the parties do not dispute that (i) Defendants employed Plaintiffs at all relevant times, [Dkt. 8, at ¶¶ 8, 24]; (ii) Defendants paid servers $2.15/hour and claimed a tip credit of $5.10/hour (the difference between the wage paid to the servers and the $7.25/hour minimum wage established by 29 U.S.C. § 206), [Dkt. 8, at ¶¶ 26–27]; or (iii) all tipped employees, including Plaintiffs, retained all tips other than a 3% portion of gross food sales that were contributed to the tip pool, [Dkt. 113-1, at ¶ 10]. The Court hereby incorporates by reference all of those previously discussed

undisputed facts [see Dkt. 136], and all facts stipulated to at trial [Dkt. 167]. The Court finds that the following facts were established by a preponderance of the testimony and documentary evidence offered and admitted into evidence at trial.[4]

### A. Tip Pool Operation

Because The Ridge pays its servers and bartenders (including Plaintiffs) $2.15/hour, Defendants supplements those employees' income with the tips they receive each shift to meet or exceed the $7.25 minimum wage. To do so, The Ridge requires all servers and bartenders to contribute 3% of their gross food sales to a tip pool (beverage sales were excluded for the purpose of calculating the tip pool contribution). That tip pool is used to redistribute tips and supplement compensation for The Ridge's support staff and server-trainees. As stated above, all servers and bartenders (including Plaintiffs) retain all tips they received from each shift other than their 3% tip pool contribution.

When the tip pool fails to generate sufficient funds to fully compensate the support staff and server-trainees, The Ridge supplements their wages out of pocket. If the tip pool generates excess funds (or "extra tips"), The Ridge requires those

---

[4] Prior to trial, the parties designated certain portions of depositions to be introduced at trial (including depositions of certain Opt-In Plaintiffs and Defendant Campbell). At trial, the parties presented live testimony from Plaintiff Weinstein, Opt-In Plaintiff Jessica Crane (a former bartender at The Ridge), and Maureen Richards (the current secretary and bookkeeper for The Ridge).

extra tips to be distributed to the bartenders who worked that night's shift.

When the latter scenario occurred during the relevant timeframe for this dispute, the server-manager on duty was responsible for collecting the extra tips and placing them in an envelope in The Ridge's safe.[5] The server-manager would write the following information on the back of that envelope: (i) the date of the shift, (ii) the amount of extra tips collected, and (iii) the names of the bartenders who those extra tips were supposed to be distributed to. The last step was not always strictly followed, however.

Instead of writing the exact names of the bartenders who were supposed to receive the extra tips, some server-managers would, instead, simply write that those tips were to be distributed to the "bar." This ambiguity apparently caused confusion among the staff (managers and bartenders alike).

Adding to that confusion, The Ridge's server-managers (including Plaintiffs) inconsistently followed certain protocols put in place to ensure that all earned and distributed tips were properly accounted for. For example, The Ridge required server-managers to record all tipped employees' earnings on Cash Out Records ("CORs") at the end of every shift. Those CORs listed (i) each server who worked

---

[5] Often, two envelopes were left in the safe: one envelope containing the extra tips, and one containing separate tip amounts sorted for individual support staff members.

7

that shift, (ii) their gross sales (including food *and* beverage sales), (iii) their respective 3% tip share contribution (which, again, was derived from only gross *food* sales, exclusive of beverage sales, so the amount included in the tip share contribution column did not result directly from the amount included in the gross sales column), and (iv) a final tally of the total tip share amount deposited into that shift's tip pool. But the CORs were not always timely or fully completed at the end of each shift. Often, server-managers left incomplete CORs with the extra tip envelope in the safe overnight.[6] This meant that Maureen Richards was forced to reconcile the extra tip distributions on her own the following morning.

## B.   Tip Pool Distribution

Maureen Richards, The Ridge's secretary, is responsible for keeping and reconciling The Ridge's books. This includes collecting and allocating extra tips left in the safe each night to ensure those tips are properly distributed. One of the practices Richards uses to ensure those tips are properly distributed is called the Support Staff Tipshare grid ("SST"). Richards uses the SST to report the pooled tips that should be distributed to staff, when those tips were distributed to the

---

[6] The Ridge's safe is protected by both a keypad and a lock. So, to open the safe, an individual must know the correct key code and have access to a copy of the key used to unlock the safe. Only Maureen Richards and the shift server-manager (including Plaintiff Weinstein and Opt-In Plaintiff Jason Bowen) had access to the safe. Defendant Campbell did not have independent access to the safe.

respective staff member, and how those tips were distributed (e.g., in cash or in the employee's paycheck).[7] Richards is not, however, responsible for distributing those extra tips to the bartenders.

Instead, during the relevant timeframe for this dispute, Richards delegated that responsibility to the server-managers on duty each shift (including Plaintiffs).[8] To do so, Richards would note on the SST which server-manager was supposed to distribute the extra tips to which bartender, and she would initial next to that note to indicate that she had received and accounted for the extra tips that were collected after the previous shift. Richards would leave the SST on a clipboard outside the manager's office for easy access. In theory, the server-managers and bartenders were supposed to sign the SST when the extra tips were distributed and received. But this did not always happen.

Based on the inconsistent manner in which Richards and The Ridge's server-managers performed their roles in the tip distribution process, the Court cannot conclusively trace the extra tips from The Ridge's safe to the bartenders. Plaintiff Weinstein testified that she never hand delivered extra tips to the bartenders.

---

[7] Server-managers are supposed to fill out the SST at the end of each shift, but this did not always happen the way The Ridge intended. As a result, the task often fell to Richards to complete.

[8] At least when the extra tips were to be distributed in cash rather than included in the bartenders' next paycheck.

9

Richards also testified that she never hand delivered extra tips to the bartenders. And Opt-In Plaintiff Jessica Crane testified that she, as a bartender, never received extra tips in cash from anyone. So, it is unclear who was ultimately responsible for distributing the extra tips to the bartenders and who fulfilled that responsibility.

Moreover, the documentary evidence introduced at trial does not track the extra tips from the safe to their destination. There appears to be a gap in The Ridge's recordkeeping system that prevents the Court from accurately tracing each dollar from the extra tips to the bartenders. But that gap does not prevent the Court from eliminating certain destinations from the realm of possibilities.

Indeed, the evidence presented at trial allows the Court to conclude that Defendants never retained *any* of the extra tips at issue. The uncontradicted testimony offered at trial clearly establishes that Richards never kept any portion of the extra tips for herself nor did she reserve any tips for The Ridge. That testimony also establishes that Defendant Campbell did not have access to the safe where the extra tips were kept. Therefore, he could not have retained any of the extra tips without assistance from one of the other server-managers, none of whom offered conclusive testimony suggesting, let alone establishing, that Defendant Campbell asked them to help him carry out any nefarious intentions. Therefore, the Court finds that Defendants did not retain any of the extra tips that were supposed to be

distributed to the bartenders.

Reconciling this finding with the Court's previous findings (e.g., that Defendants did not distribute tip pool funds to non-tipped employees), the Court concludes that the extra tips at issue could only have gone to tipped employees.[9] Indeed, Plaintiffs' counsel conceded as much during closing argument.

Accordingly, the Court finds that the evidence produced at trial establishes that Defendants did not retain any portion of the extra tips, and that the extra tips were properly distributed to The Ridge's bartenders.

## CONCLUSIONS OF LAW

Generally, tip pools are rendered invalid when the proceeds of the tip pool are either (i) distributed to employees who are not customarily or regularly tipped, or (ii) retained by the employers. See Howard v. Second Chance Jai Alai LLC, 2016 WL 7180243, at *17 (M.D. Fla. Dec. 9, 2016); see also Kubiak v. S.W. Cowboy, Inc., 164 F. Supp. 3d 1344, 1358–59 & n.20 (M.D. Fla. 2016) (collecting cases establishing that "an employer's interference with an employee's right to retain his tips through the employer's own retention or use of the proceeds of a mandatory tip pool is unlawful"); Miller v. Garibaldi's Inc., 2018 WL 1567856, at

---

[9] The Court further notes that the deposition testimony offered into evidence establishes that all tipped employees received all tips they were legally entitled to.

11

\*4 (S.D. Ga. Mar. 30, 2018) ("[T]he sharing of tips with managers invalidates the tip credit and requires the employer to pay the full minimum wage." (quotation omitted)). As discussed above, the Court dispelled the former when resolving the parties' motions for summary judgment, finding, as a matter of law, that Defendants did not distribute the tip pool funds to any employees who are not customarily or regularly tipped. [See, e.g., Dkt. 136, at 35 ("The Court has ruled that Defendants only distributed tip pool funds to tipped employees . . . .")]. Thus, the sole legal issue before the Court at trial boiled down to whether Defendants could prove, by a preponderance of the evidence, that they, as employers, never retained any portion of the tip pool funds for themselves. [Id. at 38].

Based on the foregoing factual findings, the Court concludes, as a matter of law, that Defendants carried that burden. Therefore, the Court further concludes that Defendants operated a lawful tip pool within the parameters of the FLSA. See Kubiak, 164 F. Supp. 3d at 1358–64 (finding employer entitled to claim the tip credit defense where evidence introduced failed to prove the employer wrongfully retained tip pool funds); Howard, 2016 WL 7180243, at \*17–19 (finding employer entitled to claim the tip credit defense where the employer failed "to show the precise amount of tips that each" employee received from a tip pool because the evidence established tip pool funds were only distributed to tipped employees).

12

And because the Court previously held that Defendants established the first two elements of the tip credit defense, the Court now concludes that Defendants have successfully established the only remaining element and, thus, proven they are entitled to the tip credit defense. Accordingly, the Court finds, as a matter of law, that Plaintiffs cannot prevail on their minimum wage claim.

## CONCLUSION

Based on the foregoing, the Court finds in favor of Defendants and hereby **ORDERS** that **JUDGMENT** be entered in favor of Defendants and against Plaintiffs.

**SO ORDERED** this 17th day of October, 2023.

_____
RICHARD W. STORY
United States District Judge